## THE "WANATA."

1. A collision occurred at night, about a half mile off the coast of New Jersey, north of Barnegat and between that point and Long Branch between a schooner and a pilot-boat; the latter, lying there at anchor in four fathoms of water, displaying the light required by art. 7 of the sailing regulations, and having a proper lookout, who was, however, at the time of the collision, momentarily absent from her deck. The schooner displayed no lights, owing, her claimants allege, to unavoidable accident due to the force of the wind. *Held,* 1. That the pilot-boat was not anchored in an improper place. 2. That the light displayed by her was a proper one. 3. That the momentary absence of the lookout from her deck did not contribute to the accident. 4. That the collision was not the result of inevitable accident, but was owing entirely to the fault of the schooner.

2. Like other ships, and subject to all the conditions specified in art. 7, prescribed by Congress (13 Stat. 59), concerning lights, pilot-boats, when at anchor in roadsteads or fairways, are required to exhibit a white light in a globular lantern of eight inches in diameter.

3. Art. 8 applies to sailing pilot-vessels only when they are under way.

4. The act of Congress limiting the liability of ship-owners in a case of collision does not release them from the payment of costs in the District Court, beyond the amount of the stipulation filed therefor, if they appear and make defence, nor, in case they appeal to the Circuit Court, from the payment of the costs taxable there, or of interest in the nature of damages occasioned by the appeal.

5. Stipulators for a definite amount are only bound to make good the liability of their principal to that amount, unless they have been guilty of default or contumacy, in which event, they may be held for costs and interest in the nature of damages to the extent that the same have arisen from their breach of duty.

6. Appeals, in admiralty, to the Circuit Court carry up the whole fund; and mere technical errors in the decree of that court, not injuriously affecting the rights of the parties, do not present sufficient grounds for reversing it here.

7. As the appeal-bond in this case may be treated as an admiralty stipulation, all sums due the libellants for costs and interest over and above the stipulation for costs may be collected from the sureties on that bond.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

This was a libel against the "Wanata," to recover $23,000 damages caused by her colliding with the pilot-boat "Josiah Johnson" about nine o'clock P.M., on the 6th of March, 1869. The libellant, Johnson, was the owner of the pilot-boat, and the others were the owners of certain clothing and other property on board of her. The "Wanata" was on a voyage from

New York to Charleston; and the wind was very strong from
the north-west. The pilot-boat, having split her foresail, was
at anchor off the coast of New Jersey, about half a mile from
the shore, in four fathoms of water, and from fifteen to twenty
miles north of Barnegat Light. She was struck on her
starboard side by the " Wanata," and sank in a few minutes.
The libellants allege that the collision happened through the
·fault of the " Wanata," in· not keeping a ·proper lookout, and
in sailing at too great a rate of speed. The claimants main-
tain that the collision was caused by the negligence of· the
pilot-boat ·in anchoring at· an improper place; in not exhibit-
ing a proper light, and 'in not· keeping a proper watch on her
deck.

The other facts in the case are stated, and the assignment of
errors set forth in the opinion of the court.

The vessel was ' seized by· the marshal, · and was subse-
quently released from his custody on her claimants entering,
with sureties, into a stipulation for costs in the sum of $250,
and into one for value· in the sum of $16,000, her appraised
value.

The District Court was of opinion that the " Wanata" was
wholly at fault, and entered a decree against her, awarding·
·the libellants $16,000 on account of. the loss of the pilot-boat,
clothing, and interest, and $305.27 as costs.

The claimants appealed, giving bond for $2,000 in the usual
form with the same sureties. The Circuit Court, on appeal,
decreed that the libellants recover against the stipulators for
value $16,000, damages by reason of the collision, and against
the stipulators for costs and on appeal for the costs in the Dis-
trict Court; amounting, with interest, to the sum of $323.12,
and also the costs in the Circuit Court, which, including the
interest on the amount of the damages aforesaid from the time
of the decree in the District Court, were taxed and adjusted
at the further sum of $1,085.35, amounting altogether to
$17,407.47.

The claimants having entered into an undertaking with sure-
ties in the sum of $36,000, conditioned to prosecute their appeal
. to effect, and answer all damages and costs, upon failure to make
it good, brought the case here.

· *Mr. Joseph H. Choate* for the appellants.

The collision was the result of inevitable accident, and the " Wanata " was therefore guilty of neither fault nor negligence. *The Virgil*, 2 Wm. Rob 201 ; 1 Pars. Marit. Law, 187 ; *The Thornly*, 7 Jur. 659 ; *The Ebenezer*, id. 117 ;. *The William Lindsay*, 29 L. T. N. s. 355 ; *The Amio and The Amelia*, id. 118 ; *The Grace Girdler*, 7 Wall. 196 ; *The Morning Light*, 2 id. 550.

The " Wanata " having been released upon the filing of a stipulation for value in the sum of $16,000, the stipulation took the place of the *res* in the further progress of the cause, and bore no interest. Therefore, the decree of the Circuit Court adding interest to that, and including it in the costs, is wholly without precedent or authority. *Hemmenway* v. *Fisher*, 20 How. 258 ; *The Ann Caroline*, 2 Wall. 538 ; *The Steamer Webb*, 14 id. 406.

The circumstance that the decree of the District Court was for the exact amount of that stipulation does not alter the principle or increase the power of the Circuit Court. All that the latter had before it representing value was the stipulation which had been substituted for the *res*.

Nor could interest as damages in excess of the value of the *res* be awarded against the obligors in the bond, upon appeal from the District to the Circuit Court ; for interest is neither costs nor damages, within the meaning or purpose of that bond. A bond given for costs and damages on appeal in such a suit as this does not add to the original stipulation for value, but covers such damages only as the appellee is entitled to recover ; and the above-cited cases establish that he is not entitled to interest. In admiralty, the cause in the Circuit Court is heard *de novo*; and that court awards damages by an original decree, and, of course, without interest. The bond for costs and damages on appeal might be made available not only for the costs of appeal, but for a deficiency up to and within the amount of the stipulation for value occasioned by the insolvency of the stipulators, but never in excess of it, by way of interest or otherwise.

It is obvious, in this case, that the learned circuit judge, in his opinion, meant only to award as damages the $16,000, the

amount of the *res*. The addition of interest crept into the decree. But even there it is not adjudged as damages. It is awarded specifically as interest and as part of the costs, for which there was no power in that court.

Of course, in *The Ann Caroline* and *The Steamer Webb* similar bonds for costs and damages on appeal were given as in this case, and in the same form. No appeal could be taken without them. And if the value of the *res* in court could be thereby increased, the appellees in those cases would not have been limited, as they were strictly, to the amount of the original stipulation for value; but this court would have awarded, in addition, interest on that amount, at least to the extent of the appeal-bond, after providing for the costs on appeal. The question, in any form in which it may be presented, has been determined by this court.

As to the decree of the District Court, so far as it awarded costs in excess of the $250 stipulated for costs, it will be conceded to be erroneous.

If interest should be claimed in this court upon the decree of the Circuit Court rightly adjusted, it is submitted that a review of the evidence will more than confirm the doubts expressed in the opinion of the circuit judge as to the damages awarded, and satisfy this court that $16,000 now, without interest, is an ample indemnity for all the losses sustained by the libellants. In the exercise of the discretionary power reserved in this court, as laid down in *Hemmenway* v. *Fisher*, 20 How. 255, to add further damages by way of interest to the $16,000 would give the libellants more than they ought to have, and would work injustice to the appellants.

*Mr. William Allen Butler, contra.*

The courts below having upon the same proofs found that there was no fault on the part of the pilot-boat, and that the collision was caused solely by the fault of the " Wanata," this court, unless manifest error is shown, will not reverse the decrees. Every presumption is in favor of them. *The Juniata,* 93 U. S. 337; *The Hypodame,* 6 Wall. 216; *The Grace Girdler,* 7 id. 196; *The Quickstep,* 9 id. 665; *The Spray,* 12 id. 366; *The Commerce,* 16 id. 33; *The Ship Potomac,* 2 Black, 581; *The Scioto,* Daveis, 359.

The attempt to excuse the schooner on the ground of inevitable accident wholly fails. *The Morning Light*, 2 Wall. 550; *The Virgil*, 2 Wm. Rob. 201.

There is no error as to the amounts awarded. The decree of the District Court was properly limited to the amount of the stipulation for value. There was no decree against the stipulators for either the $16,000 or the costs, but only against the schooner, with a direction that the amount awarded, with the costs, be paid out of the proceeds of the stipulations for costs and value, when paid into the registry of the court. Before any such payment was made, the appeal to the Circuit Court was taken. There was therefore no error.

The bond in the sum of $2,000 given by the claimants, on appeal to the Circuit Court, was for all damages and costs which should be awarded against them, as appellants, if they failed to make their appeal good. The total amount decreed by the Circuit Court was $17,407.47, a sum less than the amount of the stipulation and appeal-bond.

The bond given on the appeal to this court is for the sum of $36,000, and is conditioned to answer all damages and costs. The interest on the amount of the decree of the Circuit Court is the only addition to be made by way of increase to the damages below, and to this libellants are entitled.

Rule 29 of the General Rules of this court provides that *supersedeas* bonds in the Circuit Court must be taken that the appellant shall prosecute his appeal, and answer all damages and costs if he fail to make his plea good; and that " such indemnity, including ' just damages for delay,' and costs, must be for the whole amount of the decree, and interest, on the appeal." The plain distinction between the present case and *The Ann Caroline* and *The Steamer Webb*, cited by the appellants, is, that in those cases the actual assessment and award exceeded the amount of the stipulation for value. Here the amount was carefully restricted to the stipulated value; and the only question is, whether interest as well as costs shall follow an affirmance of the decree of the Circuit Court. There is no ground for depriving the libellants of interest.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Ship-owners are in no case liable for any loss, damage, or injury occasioned by collision beyond the amount of their interest in the colliding ship and her freight pending, except for costs and interest by the way of damages in case of default of payment and suit to recover the amount. 9 Stat. 635; *The Propeller Niagara* v. *The Cordes*, 21 How. 7. Nor are the stipulators, either for cost or value, ever liable for any default of their principal beyond the amount specified in the stipulation which they gave, except for costs and interest by the way of damages in case of their own default to make payment pursuant to the terms of the stipulation. *The Ann Caroline*, 2 Wall. 538; *The Union*, 4 Blatch. 90.

Whenever the obligation of the stipulator, as expressed in the stipulation, is for a definite sum, the surety stipulating to pay that sum cannot be compelled to pay more than that amount for any default of his principal. *The Steamer Webb*, 14 Wall 406; *Brown* v. *Burrows*, 2 Blatch. 341.

Stipulators, like sureties, where the stipulation is for a definite sum, are bound to make good the liability or default of the principal to the amount of the stipulation; but they cannot be held to any greater sum, unless they themselves have been guilty of default, in which case they may be held liable for costs and interest, by the way of damages, to the extent that the same have arisen from the breach of their duty to comply with the terms of their stipulation. Where the stipulation or bond is given for the value of the ship, the obligation of the stipulator is that he pay into court the sum ascertained as the value. Benedict, Adm. (2d ed.) 294; Dunlap, Adm. 174; *Lane* v. *Townsend*, Ware, 289.

Sufficient appears to show that the collision occurred between the pilot-boat and the schooner at the time alleged, off the coast of New Jersey, north of Barnegat, and between that point and Long Branch, and that the collision resulted in the total loss of the pilot-boat belonging to the first-named libellant, and of certain clothing and other property belonging to the other libellants. Pending the suit, the owner of the pilot-boat deceased, and his executors were by consent substituted as libellants in his place.

Thirteen persons, including the boat's company and six Sandy Hook pilots, were on board the pilot-boat at the time of the collision; and it appears that the pilot-boat was at anchor at the time, about a half-mile from the shore, in four fathoms of water. During the afternoon of the day, in course of her cruise for employment, she had lost or burst her foresail, and came in to repair it, and anchored at six o'clock prior to the collision, which occurred about nine o'clock the same evening.

Eleven of the persons on board were examined as witnesses; and, from their testimony, it satisfactorily appears that the wind was north-west, blowing hard; that the sails of the pilot-boat were furled; that when she anchored she backed off to the south-east, heading north-west; that it was not a thick night, and that it was pretty clear at the time of the collision; that vessels anchored all along the coast; and that the place where the pilot-boat was lying is a well-known anchorage ground.

Service was made, and the claimants appeared and filed an answer. Before answering to the libel, however, the claimants filed a stipulation for costs in the sum of $250.

Three principal defences are set up in the answer, as follows: 1. That the pilot-boat was anchored in an unusual, unsafe, and improper place, which exposed her to the very disaster which happened. 2. That she did not display a proper light. 3. That she did not have a proper watch upon her deck to guard and provide against such accidents, especially in the night-time and in stormy weather.

Due attachment of the schooner was made by the marshal under the process of monition; and it appears that the ship was subsequently discharged from custody by consent, the claimants having executed a stipulation for value, in addition to the stipulation for costs, in the sum of $16,000, the parties agreeing that, in case of default or contumacy of the claimants or their sureties, execution for the amount may issue against their goods, chattels, and lands. Testimony was taken on both sides, which is fully reported in the transcript. Hearing was had; and the District Court entered a decretal order in favor of the libellants, and sent the cause to a commissioner to ascertain and compute the amount of the damages due to the owner of the pilot-boat,

and to the other libellants respectively for the loss of clothing and other property on board the pilot-boat at the time when sunk and lost by the collision.

Pursuant to the decretal order, the commissioner heard the parties, and made a detailed report, in substance and effect as follows: 1. That the owner of the pilot-boat is entitled to recover the sum of $14,694.94.   2. That the other nine libellants are each entitled to recover the sum therein set forth, amounting in the aggregate to the sum of $1,305.06.

Remark should be made that the owners of the schooner, George Sparrow and David L. Turner, are the claimants of the colliding schooner, and that they excepted to the report of the commissioner.   Both sums, when added together, make $16,000, which is the exact amount of the stipulation for value.

Amendment was made to the libel, which obviated all except one of the material exceptions of the claimants to the report of the commissioner.   They excepted to the amount reported as the value of the pilot-boat, which exception was overruled by the District Court.

Matters of a preliminary character being disposed of, the District Court confirmed the report of the commissioner, and entered a final decree against the schooner and in favor of the libellants, ten in number, for the sum of $16,000 for the loss of the pilot-boat, clothing, and the other property lost, together with interest by way of damages, with costs taxed at $305.27.

Throughout it was the owners of the schooner as claimants who made defence to the libel, and they appealed to the Circuit Court.   Both parties were heard in the Circuit Court upon the evidence introduced in the District Court, and the Circuit Court affirmed the decree of the District Court, and ordered and decreed that the libellants recover against the schooner the sum of $16,000 as damages sustained by the collision, and the costs taxed in the District Court, amounting with interest to the sum of $323.12, and also the costs taxed in the Circuit Court, which, including the interest on the damages from the date of the decree in the District Court to the date of the decree of the Circuit Court, taxed at the further sum of $1,085.35, amounting together to the sum of $17,407.47.

Stipulation for costs in the sum of $250 was given by the claimants in the District Court when they entered their appearance, and they subsequently gave a stipulation for value in the sum of $16,000. Apart from that, it should also be borne in mind that it was the claimants who appealed to the Circuit Court, and that they gave bond with sureties in the sum of $2,000 to prosecute their appeal with effect.

Two stipulations and an appeal-bond were given in the District Court, the sureties in each being the same persons; and the record shows that the Circuit Court, at the same time that the decree was entered against the schooner, entered a decree against the stipulators for value in the sum of $16,000, and against the stipulators in the other stipulation and the sureties in the appeal-bond in the sum of $1,407.47, the two sums being exactly equal to the amount of the decree entered against the schooner, which includes the $16,000 recovered as damages in the District Court, together with the costs taxed in the District Court, and interest on the sums recovered in that court to the date of the decree entered in the Circuit Court, and the costs taxed in the Circuit Court, amounting in all to the sum of $17,407.47.

Immediate appeal was taken to this court by the claimants of the schooner; but neither the stipulators for value nor for costs, nor the sureties in the bond given to prosecute the appeal from the District Court to the Circuit Court, have ever appealed from the decree entered against them in the Circuit Court.

Since the appeal was entered here, the appellants, who are the owners and claimants of the schooner, have assigned error as follows: 1. That the Circuit Court erred in holding that the place where the pilot-boat was lying was a proper anchorage. 2. That the court erred in holding that the pilot-boat showed a proper light. 3. That the court erred in holding that the pilot-boat was not bound to show the light required of such boats when under way. 4. That the court erred in holding that the want of a lookout on the pilot-boat did not contribute to the collision. 5. That the court erred in holding that the schooner had no proper lookout. 6. That the court erred in holding that the schooner was in fault and that the pilot-boat was without fault. 7. That the court erred in awarding costs

taxed in the District Court in excess of the stipulation for costs.

Pilot-boats, when lying at anchor like other ships, are required to exhibit a white light in a globular lantern of eight inches in diameter, with all the other conditions specified in the article prescribed in the act of Congress concerning lights. 13 Stat. 59. Art. 8 applies to sailing pilot-vessels when under way, and it does not apply to pilot-boats when lying at anchor.

Enough appears to show that the pilot-boat was lying at anchor, and the uncontradicted testimony shows that she was anchored in a proper place. Other support to that proposition is unnecessary; nor is any other argument required to support the proposition that the light shown by the pilot-boat was the proper one, as regulated by the act of Congress, than that exhibited in the very able opinion of the district judge. Full proof was exhibited that the light was trimmed and replaced in the halyards sixteen feet above the deck at half-past seven o'clock in the evening, and the evidence clearly shows that it burned brightly from that time to the collision.

Even suppose that is so, still it is contended by the appellants that the pilot-boat had no lookout, and that the Circuit Court erred in holding that the want of a lookout on board the pilot-boat did not contribute to the collision.

Evidence to support the first branch of the proposition is entirely wanting, as appears from a careful examination of all the testimony in the case. Instead of that, it clearly appears that the anchor-watch came on deck as early as eight o'clock; and that he kept a constant lookout until just before the schooner struck the starboard side of the pilot-boat. Prior to that he was standing on the port side of the quarter-deck, and was in the act of getting his coat from the forecastle, having left the deck for that purpose when the collision occurred.

Viewed in the light of these circumstances, the court is of the opinion that the momentary absence of the lookout from the deck did not contribute to the collision, inasmuch as it clearly appears that the schooner did not show any signal-lights, and that she had no lookout forward, where a lookout should be stationed.

. Lookouts should be stationed forward; and, if the anchor-watch had been on deck, it is exceedingly doubtful whether he would have seen the schooner in season to adopt any precautions, and, if he had, he could not have done any thing except to hail; and, inasmuch as there was no lookout on the forward part of the schooner to give heed to any such warning, it is scarcely possible that the watch, if he had remained on deck, could have rendered any useful service.

Vessels under way in the night-time are required by law to display proper signal-lights; and they should never be without a competent lookout properly stationed on the vessel. Delinquent as the schooner was in respect to both of those requirements, the suggestion that the lookout of the pilot-boat was absent from the deck at the moment of the collision is not entitled to much weight, as the circumstances afford a strong presumption that his absence did not contribute to the disaster.

.Attempt is made by the appellants to ascribe the omission of the schooner to display signal-lights to inevitable accident, but the evidence introduced to support the theory is quite insufficient for the purpose. Proper signal-lights were shown by the pilot-boat; and the court is of the opinion that the schooner might have done so, if those who were responsible for her navigation had made proper exertions to comply with that requirement. Nothing is shown in the case to support that theory, or to furnish any proper excuse for omitting to adopt that highly useful precaution. *Union Steamship Co.* v. *New York Steamer Co.*, 24 How. 307; *The Morning Light*, 2 Wall. 550.

Weighed in the light of these suggestions, it follows that the schooner was wholly in fault, and that all the assignments of error, except the last, must be overruled. Suppose that is so, still it is insisted that the District Court erred in awarding costs to the libellants in excess of the stipulation filed for that purpose, it appearing that the decree for damages was equal to the whole amount of the stipulation for value, and that the Circuit Court erred in affirming that decree and in allowing costs to the libellants beyond the amount of the stipulation for costs filed in the District Court. Superadded to that, they also contend that the Circuit Court erred in decreeing that interest should be taxed as costs in addition to the damages awarded by

the decree of the District Court, inasmuch as the damages there awarded were equal to the full amount of the stipulation filed in the District Court.

Beyond all doubt, the decree for the damages awarded in the District Court is correct, as it is for the exact sum specified in the stipulation for value; but it is equally clear that the costs taxed against the schooner exceed the stipulation for costs filed by the claimants in the District Court in the sum of $55.27, as appears by the record.

Prompt appeal was taken by the owners of the schooner, as claimants, to the Circuit Court; and the principal owner of the schooner, George Sparrow, with James R. Sparrow and James R. Sparrow, Jr., as sureties, gave bond to the libellants in the sum of $2,000, the condition of the instrument being that if the appellants, George Sparrow and David L. Turner, shall prosecute their appeal with effect, and pay all damages and costs which shall be awarded against them, if they fail to make their appeal good, then the obligation to be void; otherwise, to remain in full force.

Admiralty courts proceed according to the principles, rules, and usages which belong to the admiralty, as contradistinguished from courts of common law.  *Manro* v. *Almeida*, 10 Wheat. 473; 1 Stat. 276.

Whenever a stipulation is taken in the admiralty for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators are held liable to the exercise of all those authorities on the part of the court which it could properly exercise if the thing itself were still in the custody of the court.  *The Palmyra*, 12 Wheat. 1.

Such a stipulation is binding on the Appellate Court, unless it appears that the property was released by misrepresentation and fraud.  *Houseman* v. *The North Carolina*, 15 Pet. 40.

Bail is taken for property attached for the value of the same when delivered to the claimant, and it will not be reduced if the property when sold brings less than the appraised value; and it is the settled rule, that, where the value of the property held in a cause of damage is insufficient to pay the loss, it is not competent for the court to award damages against the sure-

ties in the stipulation beyond the proceeds or value. *The Hope.*
1 Rob. A. 155.

Nor can the sureties in a stipulation for costs be held for
any greater sum on account of the default or contumacy of the
principal than the sum specified in the stipulation; but it is
well settled that costs may be awarded against the owner beyond the stipulation, if he appeared and made defence. *The
John Dunn,* id. 160.

Sureties in admiralty, like sureties at law, are only bound to
the extent of the obligation expressed in their stipulation, unless
they are themselves guilty of default, or appear and make defence, in which case they become responsible for costs, and, in
some cases, for interest by the way of damages for the delay of
payment.

Costs, unquestionably, were taxed in the District Court beyond the sum expressed in the stipulation filed to secure their
payment; but the decree in the District Court, both for costs
and damages, was against the schooner. No decree was entered
in that court either against the stipulators for costs or the stipulators for value; and the contention is, that the owners defending the suit are liable for costs even where the damages are
equal to the stipulated value of the property, and the costs taxed
exceed the amount of the stipulation for costs filed when the
owners appeared in the District Court.

Doubtless the rule was so prior to the passage of the act of
Congress limiting the liability of ship-owners. 9 Stat. 635.
Since the passage of that act, the question arises whether costs
can be allowed in such a case, where it appears that the decree
for damages exhausts the whole amount of the stipulation for
value.

Much aid is derived in the solution of that question from the
decisions of the British courts in construing the act of Parliament passed for the same purpose. By that act the liability of
ship-owners was limited, in the cases therein specified, to the
value of the ship or freight. 53 Geo. III., c. 159. Cases have
arisen under that act where the proceeds of the ship were insufficient to make good the loss, in which it is held that the court
cannot decree against the owner for the excess of damage beyond the proceeds of the ship. *The Volant,* 1 Rob. A. 383.

Other decided cases support the same rule; but it is settled law that the d fending owners in such a case are liable for costs, even though the damages recovered exhaust the whole amount of the stipulation for value.  *The John Dunn, supra.*

Costs were awarded against the owners in that case beyond the amount of the proceeds of the vessel, the owners having appeared and defended the suit.  Pending the litigation, the owners applied to the Queen's Bench for a prohibition, and insisted that costs could not be allowed even against the owners where the damages were equal to the value of the ship, the words of the act of Parliament being that the liability of ship-owners shall be limited to the value of the ship or freight. Hearing was had, eminent counsel appearing on both sides, and the court, Lord Denman delivering the opinion, decided to the effect that the limitation did not discharge defending ship-owners from costs.

Interest in such a case is allowed as well as costs; and, in case of appeal, the interest is cast upon the whole amount of the decree in the court below, including the costs as well as the amount of the damage. *The Dundee,* 2 Hagg. 137.

Due objection to a decree settled in that form was made in that case; but Lord Stowell held that the allowances were correct, that the costs to which the party is put to recover his just damages is a part of his loss, and that the costs in such a case are properly added to the damages in the computation of interest. Objection was also made in that case to the allowance of interest, as the damages were equal to the value of the ship; but the same learned judge answered that the sufferer is entitled to such costs as he shall incur in recovering the value of the ship, and to interest if payment is delayed, meaning, of course, that the party causing the delay is liable in such a case: and he added, that the suffering party is entitled to remuneration for the costs to which he is driven for recovering his loss, as the costs con-stitute a part of the same; that the act of Parliament is not guilty of the injustice which would ensue if it excluded the costs, which are necessary for replacing the sufferer in a just state of compensation.  Such a party, if he is reinstated in the value of the property without litigation, is not entitled to costs; but if he cannot obtain the benefit of the regulation in respect

to compensation without being driven to the necessity of a suit, the statute would be chargeable with great injustice if it did not allow him to recover costs; and these remarks apply with equal force to the charge of intervening interest arising from delay occasioned by such litigation.

Common-law authorities support the same construction of the act of Parliament referred to, and show to a demonstration that the rule is firmly established in all the courts of the parent country. *Ex parte Rayne*, 1 Gal. & Dav. 377; *Gall* v. *Laurie*, 5 B. & C. 163.

None of these authorities, however, conflict in the least degree with the proposition that the sureties in an admiralty stipulation can never be compelled to pay more than the specific sum expressed in the stipulation for any default or contumacy of the principal. Seasonable payment of the sum expressed in the instrument is all that can be required at their hands; but if they neglect to fulfil the terms of the instrument, and the suffering party is driven by their neglect to resort to legal measures to recover the amount to satisfy his loss, they are then, like the delinquent ship-owner, liable for costs and interest occasioned by their neglect and contumacy. Our act of Congress limiting the liability of ship-owners was passed subsequent to the British act referred to, and, in the respect involved in this case, is subject to the same construction.

Tested by these considerations, it follows that the decree of the District Court, which was a decree against the schooner, is correct.

Concede that, and still the appellants insist that the Circuit Court erred in awarding costs taxed in the District Court in excess of the stipulation filed there before or at the time the claimants entered their appearance.

Properly analyzed, the decree of the Circuit Court is as follows: 1. That the decree of the District Court is affirmed. 2. That the ten libellants recover as damages the sum of $16,000, which is the exact amount of the stipulation for value. 3. That they recover the costs taxed in the District Court, with interest to the date of the decree, amounting to the sum of $323.12. 4. That they recover the costs taxed in the Circuit Court, including the interest to date on the dam-

ages awarded in the District Court, amounting to the sum of $1,085.35, making in the aggregate the sum of $17,407.47.

Two technical errors occur in adjusting the terms of the decree of the Circuit Court; but, inasmuch as neither will injuriously affect the rights of the parties, the decree will not be disturbed. 1. Interest is not costs in any sense, and, when allowed, it should be decreed as damages, and be added to the damages awarded in the District Court. 2. Costs and interest should never be blended in such a case, as it would be difficult, if not impossible, to ascertain the amount to be paid by the stipulators for costs, if less than the full amount of the stipulation, or to separate the same from the amount to be paid by the sureties in the appeal-bond.

Cases often arise where such an adjustment is necessary; and it would arise here were it not that the sureties in the stipulation for costs in the District Court and the sureties in the appeal-bond are the same persons. Nor will the other error operate to the prejudice of any one of the parties, as it is clear that the allowance of interest is a proper charge in the decree against the schooner and the appellants, within the principle of the authorities to which reference has been made.

Nothing remains for re-examination except that portion of the decree which adjudges what portion of the aggregate sum awarded shall be paid by the sureties in the respective stipulations, and what portion shall be paid by the sureties in the appeal-bond.

Sixteen thousand dollars were awarded to the ten libellants as damages; and the decree is, that the stipulators for value shall pay that amount, which is obviously correct. They stipulated for that amount; and, inasmuch as they did not make defence, and have not been guilty of default or contumacy, they cannot be compelled to pay interest or costs to the libellants beyond their stipulation. *The Palmyra*, 12 Wheat. 10. Nor can the stipulators for costs be compelled to pay more than the sum of $250 for the same reasons, as they stipulated for a definite sum, and have not made defence, nor been guilty of any default. Clerk's Praxis, tit. 63, p. 141; *The Ann Caroline*, 2 Wall. 538; *The Steamer Webb*, 14 id. 406.

Accrued interest was allowed in the Circuit Court in addition

to the damages awarded in the District Court, which, if added to the sum there awarded, would exceed the stipulation for value; and the costs taxed in the Circuit Court, if added to the costs taxed in the District Court, would much exceed the stipulation for costs, which was only for the sum of $250.

Allowances of the kind, if the case stopped there, would clearly be error; but the case does not stop there, as will presently fully and satisfactorily appear. Mention has already been made that the claimants, who were the owners of the schooner, appealed to the Circuit Court, and that they gave an appeal-bond in the sum of $2,000, with the same persons as sureties as those who became sureties in the stipulation for costs and value.

Nothing can be better settled, said Judge Story, than that the admiralty may take a *fidejussory* caution or stipulation in cases *in rem*, and may in a summary manner award judgment and execution there thereon. Jurisdiction to that effect is possessed by the District Court; and, being fully authorized to adopt the process and modes of proceeding of the admiralty, they have an undoubted right to deliver the property on bail and to enforce conformity to the terms of the bailment. Authority to take such security is undoubted, and, whether it be by a sealed instrument or by a stipulation in the nature of a recognizance, cannot affect the jurisdiction of the court. Having jurisdiction of the principal cause, the court must possess jurisdiction over all the incidents, and may, by motion, attachment, or execution, enforce its decrees against all who become parties to the proceedings. *The Alligator*, 1 Gall. 145; *Nelson* v. *United States*, Pet. C. C. 235. Bonds, says Dunlap, are, to all intents and purposes, stipulations in the admiralty. Dunlap, Prac. 164.

Where the claimant appeals from the decree of the District Court, the bond and other stipulations follow the cause into the Circuit Court; and, upon the affirmation of the decree, the fruits of the appeal-bond and other stipulations may be obtained in the same manner as in the court below, they being in fact nothing more than a security taken to enforce the original decree; and are in the nature of a stipulation in the admiralty. *McLellan* v. *United States*, 1 Gall. 227.

It matters not, says that learned magistrate, whether security

in an admiralty and maritime cause be by bond, recognizance, or stipulation, as the court has an inherent authority to take it, and to proceed to award judgment or decree thereon according to the course of the admiralty, unless where some statute has prescribed a different course. *The Octavia*, 1 Mason, 150; 2 Conkl. Adm. (2d ed.) 105; *Holmes* v. *Dodge*, Abbott, Adm. 60; *Gaines* v. *Travis*, id. 422; Benedict, Adm. (2d ed.) 290.

Everywhere it is admitted that an appeal in admiralty carries up the whole fund, and that is the duty of the Circuit Court to execute its own decree; and it is equally clear that the fund in this case consists of the stipulation given in the District Court for costs, the stipulation given there for value, and the bond or stipulation in the sum of $2,000 to prosecute the appeal with effect and pay all damages and costs awarded against them, if the appellants shall fail to make their appeal good. *Montgomery* v. *Anderson*, 21 How. 386.

Two points were ruled in that case applicable to this: 1. That the appeal in admiralty carries up the *res*. 2. That the Circuit Court must carry into execution its own decree. *The Collector*, 6 Wheat. 194; 2 Pars. Ship. 493.

Sureties in such an appeal-bond or stipulation may become liable for the whole amount specified; as the condition of the instrument is that the principal shall prosecute his appeal with effect, and pay all damages awarded against the appellant, if he fail to make good his appeal. Hence it was decided by this court that the surety in such a bond is liable for the entire amount of damages and costs, to the extent of the penalty, and interest thereon from the date of the institution of the suit, when the property attached produces less than the judgment or decree. *Ives* v. *Merchants' Bank*, 12 How. 159.

Examined in the light of these suggestions, as the decree should be, it is manifest that it contains no error, as the amount of the stipulation for value is decreed to be paid to the libellants for the losses sustained by the collision, and the stipulation for costs is decreed to be paid to the libellants in part discharge of the taxed costs, leaving the balance of the taxed costs and the accrued interest from the date of the decree in the District Court to the date of the decree in the Circuit Court to be paid by the sureties in the appeal-bond, which

may, by the rules and usages which belong to courts of admiralty, be treated as an admiralty stipulation. 1 Stat. 276; Admiralty Rules 5 and 21.

Admiralty bonds and stipulations taken in the District Court, inasmuch as they constitute the fund out of which compensation is to be decreed to the libellants, follow the appeal into the Circuit Court.

Authorities of highest character show that sureties for a definite sum in an admiralty stipulation can never be compelled to pay more than the sum stipulated, unless they are guilty of default or contumacy, in which event they may become liable for interest and the taxable costs incurred by the delay; but the respondent, where there is no statutory prohibition, may become liable for costs beyond the security given for the same, and for additional damages in the nature of interest, in case of appeal. Were it not so, the injured party, in case of delay, would never be made whole; but such a recovery against the respondent will not enlarge the liability of the sureties in the stipulation for cost or value, as the remedy of the libellants in that event is found in the appeal-bond or stipulation given to make the appeal good. Costs and interest are given in such a case, not as indemnity for the loss set forth in the libel, but for the reason that the loss ascertained in the decree of the District Court was not paid at the proper time. *The Northumberland*, Law Rep. 3 Adm. & Ecc. 33, 35; *Ives* v. *Merchants' Bank*, *supra*; *The Diana*, 3 Wheat. 58; *Sneed* v. *Wister*, 8 id. 690; 5 Stat. 518.

Suffice it to say, there is no error in the record.

*Decree affirmed.*