THE TWENTY-ONE FRIENDS.

THE JOHN H. MAY.

THE TWENTY-ONE FRIENDS *v.* THE JOHN H. MAY.

*(District Court, E. D. Pennsylvania.* November 28, 1887.)

COLLISION—LOOKOUT—WHAT CONSTITUTES—ATTENTION TO VARIOUS DUTIES.
   Libelant, having the right of way, was run into by respondent in a thick
   night. It was in evidence that the respondent's lookout had been dividing
   his attention between looking out and reefing sail. *Held* that, where a vigi-
   lant lookout might possibly have prevented the result, the plea of inevitable
   accident should not be sustained when that duty was neglected.

In Admirality. Libel for damages.

The Twenty-One Friends, libelant, sued the John H. May, respondent,
for damages, the result of a collision.

*Flanders & Pugh,* for libelant.

*Edmunds & Tilton,* for respondent.

BUTLER, J. I will do no more writing in this case than is necessary
to indicate the grounds on which the decision rests. As in all similar
cases, the testimony is conflicting and irreconcilable. If an analysis of
it were desirable, I would not have time to make it. I do not see, how-
ever, that it could answer any useful purpose.

The libelant had the right of way. The respondent was therefore
bound to keep off. She did not, and the burden is on her to show why.
(The libelant's admission that the weather was "thick" does not remove
it.) The excuse assigned is inevitable accident, arising from inability
to see. To support this assignment she avers, and has called witnesses
to prove, that a vigilant lookout was maintained; and that the libelant
was not seen, and could not be, until too close to be avoided. If this
averment is proved, her case is made out; if not, she is responsible for
the collision. The night required a most vigilant lookout. If the re-
spondent failed to maintain it, her negligence tended directly to the dis-
aster, which must therefore be attributed to it, in the absence of clear,
unerring proof that some other cause intervened to which the result
should be assigned. In the presence of such proof, the question of look-
out is unimportant, as said in *The Farragut,* 10 Wall. 333, and *The Wa-
nata,* 95 U. S. 610. Where the circumstances, however, are such that
a vigilant lookout might, even possibly, have guarded against the re-
sult, the allegation of "inevitable accident" should not be sustained when
this duty has been neglected. In such case, it is impossible to know
that the faithful observance of it would not have avoided the disaster.
Where, therefore, it is shown that the duty was neglected, (or, more ac-
curately, where it does not affirmatively appear to have been observed,)
we cannot say the accident was inevitable. One who sets up this de-

fense, under such circumstances, should be held to the clearest proof. In the case before us, witnesses have been called from other vessels, by both sides, to the character of the night, and the ability to see. No one of them was at the point of collision, and it is impossible to say from their testimony whether the lights of a vessel could there be seen or not. It is certainly insufficient to prove they could not. The point can only be settled by one who was present, endeavoring to see.

The case turns, therefore, on the question whether the respondent maintained a proper lookout. If she did, and could not see, we may safely affirm that the collision was inevitable; otherwise, we cannot. Did the respondent maintain such a lookout? Not only is it not shown that she did, in my judgment, but, on the contrary, it is shown that she did not. This conclusion is drawn from her own testimony, and that of disinterested witnesses on the other side, excluding the crew. It distinctly appears that no one was devoting his undivided attention to this duty. All hands were engaged in reefing sale, the mate going back and forth, in the intervals he could spare, to look out. Of course, there is the usual conflict of testimony respecting this, but the clear weight of evidence, direct and circumstantial, supports the conclusion stated; indeed, it seems to be admitted. The respondent's brief says: "The momentary absence of our lookout from the bow is shown to be immaterial, because, as soon as the vessels approached near enough for a lookout to be of service, our lookout was on the bow, in his proper place;" and again: "There was no element of negligence in calling our lookout from the bow." Thus is it conceded that a vigilant lookout was not maintained. The excuse that all hands were needed to reef sail is invalid. The respondent had no higher, nor more urgent and imperative, duty, than that of maintaining a constant, unremitting look-out. In view of the weather and locality, it was gross negligence to disregard it. Her own safety, as well as that of other vessels and crews, demanded the utmost vigilance in this respect. If she could not observe it, and continue her course, she should have stopped. To call a furtive glance now and then from the bow, by one assigned to other duties as well as this, a proper lookout, especially under such circumstances, is an abuse of language. The position assumed—that the neglect was unimportant, "because, as soon as the vessels approached near enough for a lookout to be of service, the lookout was in his place"—is a narrow and perilous one; it is almost, if not quite, fatal. The negligence admitted raises a strong presumption against the respondent generally, and particularly as respects the situation when the vessels came within view. If thus negligent, it is difficult to believe that the lookout happened to be in his proper place at the critical moment. If he was, it was purely accidental. I believe, however, he was not,—that libelant was in view before he went forward, and as soon as he was in position to see past obstructions he saw her. He testifies otherwise, but he is contradicted by previous statements, by other evidence on the subject, and by the probabilities of the case. Besides, the witness is too deeply interested in the subject to be relied upon with confidence. His statements on com-

ing ashore, (to his father,) and those of the master soon after the occurrence, support the belief stated.

No argument can be based upon the allegation that libelant failed to see the respondent. The respective situations were different. It is probable the latter's opportunity of seeing was better. She had the storm nearly astern, while the other had it in front. But we do not know that the libelant did not see the respondent. Unfortunately, the testimony of her crew cannot be accepted. They have testified on both sides, and shown themselves unworthy of credit.

I attach no importance to the allegation now made that the libelant's lights were imperfect. No suggestion of this or of any other fault is found in the answer, and the witness by whom alone it is supported testifies under circumstances which forbid reliance upon his statements. Not only his testimony, but that of all members of the libelant's crew, has been disregarded. They have shown themselves, as just stated, unworthy of confidence. I will not unnecessarily dwell upon this subject. It is sufficient to say I am satisfied that, impelled by gratitude for their rescue, kindly treatment on board the respondent, sympathy for her master, who was much distressed by the accident, and apparently fearful of responsibility for it, as well as by persuasion to that end, they conspired to suppress the truth. Immediately upon coming ashore, they accompanied the master and his crew to the office of respondent's counsel, were there examined, and seemed zealous to exculpate the respondent from blame. Subsequently they supported the statements then made, under oath; and, later, told the story of their misconduct, recanted, and appeared as witnesses on the other side. The cook, who testified respecting the libelant's lights, went immediately into the respondent's service, and has continued there ever since, under influences apparently hostile to the libelant. It is proper to say that there is no evidence to connect the respectable owners of the respondent in any way with the misconduct, and that the very high character of their counsel forbids that he should be suspected even of having had knowledge of it.

I have attached no importance to the fact that neither vessel was signaling, by horn or otherwise, at the time of the accident, or previously. It was not customary to do so in such weather, and no inference, therefore, can justly be drawn against either for omitting it. Although the statute which requires the use of a horn in snow-storms had been passed a few days before, it had not been promulgated, and is not, therefore, applicable to this case.

A decree must be entered for the libelant.