## In re HARRIS et al.

(Circuit Court of Appeals, Second Circuit. August 1, 1893.)

1. LIMITATION OF LIABILITY—GIVING OF BOND—STIPULATION FOR INTEREST.
    In a proceeding for limitation of liability, where a bond is taken for the appraised value of the vessel, pursuant to admiralty rule 54, it is proper for the court to require that such bond shall include a stipulation for interest from the date thereof.

2. SAME—COSTS.
    Where, in a proceeding for limitation of liability, the owners of the vessel unsuccessfully litigate the question of any liability on her part, they are chargeable with the costs of such litigation. The Wanata, 95 U. S. 600, followed.

3. ESTOPPEL—PAYMENT OF INSURANCE POLICY—SUBROGATION—EXCEPTION IN POLICY—EFFECT OF.
    An insurance company having paid a loss caused by the stranding of a lighter in charge of a tug, through the negligence of the latter, took an assignment of the claim of the insured, and libeled the tug for the loss. Held, that the insurance company was not estopped from alleging negligence on the part of the tug because of an exemption in its policy against liability for all loss arising from want of ordinary care and skill in navigating the insured vessel.

4. SAME.
    Nor was the company estopped because of a statement in a receipt given by the assured that, at the time of loss, the lighter was in charge of the tug, nor because of a protest by the master of the tug. among the proofs of loss, stating that the stranding was due solely to the extraordinary and irresistible force of the flood tide, and ought not to be attributed to any default in navigation.

Appeal from the District Court of the United States for the Eastern District of New York.

In Admiralty. Petition by Charles F. Harris and others, owners of the steam tug Howard Carroll, under the act of March 3, 1851, limiting the liability of shipowners. From a decree for libelants, petitioners appeal. Affirmed.

E. D. McCarthy, for appellants.

Jos. F. Mosher, for the insurance company.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. On December 26, 1889, a loaded car float, belonging to the New York, New Haven & Hartford Railroad Company, in tow of the steam tug Howard Carroll, was stranded upon a rock in the East river, causing damages to the float and its cargo. On March 19, 1890, the Aetna Insurance Company, of Hartford, Conn., insurers of the railroad company on the cars

and their contents, filed a libel in rem against the tug for such damages and expenses of salvage, alleging that the stranding was occasioned by the negligence of the persons in charge of and navigating the tug. Thereupon, on March 22, 1890, the petitioners filed their libel and petition, praying that they might be held entitled to the benefit of the act of March 3, 1851, limiting the liability of shipowners. An order was entered directing an appraisement of the interest of the petitioners in the steam tug, her tackle, etc., and freight, which interest was duly appraised at $4,150. Petitioners thereupon, on March 28, 1890, filed a bond, with sureties, stipulating, upon the order or decree of the district court or of any appellate court, to pay into said court, subject to its order, the sum of $4,150, with interest from the date of the bond. Petitioners protested against being required to stipulate for interest, but the district court would accept nothing else or different.

The proceeding to limit liability was conducted according to law and the practice of the admiralty. Petitioners defended against any claim for liability, contending that the stranding occurred without any fault or negligence of their own, or of those in charge of the navigation of the tug. The district court, however, held that the stranding was caused by the neglect and want of care of those in charge of the Howard Carroll, and decreed that various claims for damages and debts against the tug, aggregating some $12,000, were duly proven. It thereupon decreed that the petitioners and their sureties should pay into court the amount of their stipulation for value, to wit, the sum of $4,150, with interest from the date of the bond; that the costs and expenses of the proctors for petitioners in the proceedings for limitation of liability should be paid from the fund, but not any costs or expenses incurred by reason of the denial of all liability; and that the Aetna Insurance Company and the New York, New Haven & Hartford Railroad Company, with whom the owners of the tug had litigated the question of liability for the damages resulting from the stranding, should recover from such owners the costs of that litigation. The petitioners appealed to this court, and have raised and argued here three assignments of error.

1. Appellants contend that the district court erred in requiring a stipulation for interest from the date of the bond upon the appraised value of ship and freight, and insist that, in proceedings under the act of 1851, interest upon such value can be exacted only from the date of the final decree. Several cases are cited in support of this contention, (The Ann Caroline, 2 Wall. 538; The Wanata, 95 U. S. 600; The Manitoba, 122 U. S. 97, 7 Sup. Ct. Rep. 1158; The Jose E. More, 37 Fed. Rep. 122;) but they are not controlling, because in no one of them did the bond provide for interest, and the obligors in a bond conditioned only to pay the stipulated value upon decree could not be liable for interest until the decree fixed their liability. But it is further contended that, upon principle, the owners can in no event be held liable for anything beyond the value of the vessel and freight; that, therefore, the

stipulation, being for illegal interest, is void, being unsupported by any consideration, upon the principle that stipulations given pursuant to law are not enforceable beyond the demands of the law, no matter what promises they may contain. The statement in appellant's brief that "section 4 of the act of 1851 (now sections 4284, 4285, Rev. St. U. S.,) says that all claims against the shipowner shall cease from and after the time when he surrenders his vessel, or gives a bond for her value," is not entirely accurate. The statute contains no provision for the giving of a bond. It is only upon a transfer of his interest in the vessel and freight to a trustee appointed by the court that claims against the owner are declared by the statute to cease. It is the fifty-fourth rule in admiralty, which, presumably for the relief of the shipowner who might wish to put his vessel to some use, provides as follows:

"Rule 54. * * * And thereupon the court, having caused due appraisement to be had of the amount or value of the interest of said owner or owners, respectively, in such ship or vessel, and her freight, for the voyage, shall make an order for the payment of the same into court, or for the giving of a stipulation, with sureties, for payment thereof into court whenever the same shall be ordered; or, if the said owner or owners shall so elect, the said court shall, without such appraisement, make an order for the transfer by him or them of his or their interest in such vessel and freight, to a trustee to be appointed by the court under the fourth section of said act."

Under this rule the right to elect that he will transfer his interest, and thus limit his liability in the way provided by the statute, is expressly reserved to the owner. If, however, he prefer to avail of the alternative offered by the rule, and to substitute the appraised value for the res, it is left to the discretion of the court to determine whether such value shall be paid into court in cash, or secured by a bond. If it is paid in cash, the fund may be invested, and increased by accumulations of income during the continuance of the litigation; and, as the fund thus held by the court belongs to the creditors, its increment (to the extent of their claims) will also belong to them. Where, however, it is not paid into court, it remains in the hands of the debtor, and, for the use of a fund not belonging to him, it is but fair and just that he should pay. The Favorite, 12 Fed. Rep. 213. In cases, therefore, where the owner elects not to transfer, and asks to be allowed to receive his vessel upon stipulating to pay the appraised value of his interest at some future day, instead of substituting the money for the res, it is eminently proper that he should be required to stipulate for interest from the time when he thus releases his ship till the money which takes its place is required for final distribution among the creditors, whose fund it is; and there is nothing in either the statute or the rule which expressly or inferentially forbids the court to require him so to do. The additional liability thus incurred arises, not because of the original offense, but because the owner has chosen substantially to borrow from his creditors the money, which, under the rule, is to take the place of the offending vessel.

2. The appellants contend that the district court erred in award-

ing against the owners the costs of the litigation in which they contested, unsuccessfully, the right of the insurance company and of the railroad company to recover anything. This contention is unsound. The case of The Wanata, 95 U. S. 600, is abundant authority for the proposition that defending owners in cases such as this are liable for costs.

3. The appellants also assign it as error that the district court decreed in favor of the Aetna Insurance Company, and did not adjudge that said company, "being subrogated to the rights of the assured only, was estopped to allege negligence on the part of those in charge of the Howard Carroll at the time of the accident." That the stranding of the barge was caused, as the district judge found, by the neglect and want of care of those in charge of the tug, is not controverted upon this appeal. The policy of insurance contains this clause: "Excepting all perils, losses, or misfortunes arising from * * * want of ordinary care and skill (such as is common in said navigation) in lading or navigating said lighters," etc. The loss was paid upon an adjustment, which states on its face that it is subject to subrogation. At the time of payment the railroad company gave a receipt stating that, at the time of loss, the float was in charge of the Howard Carroll, and assigned all claim of the railroad company for damages arising from or connected with such loss. Among the proofs of loss was a protest made by the master of the tug, stating that the stranding was due solely to the "extraordinary and irresistible force of the flood tide, * * * and ought not to be attributed to any default in navigation." In these facts, however, we find no support for the contention of the appellants. The clause above quoted from the policy was manifestly inserted for the benefit of the insurer, and might be waived by it. Sun Mut. Ins. Co. v. Mississippi Val. Transp. Co., 17 Fed. Rep. 919. The equities between insurer and insured are not a matter with which the wrongdoer has any concern. Whether the insurance company paid because it thought the tug was blameless, or because it doubted whether negligence on the part of those on the tug was within the terms of the exception, or because it supposed it to be good business policy to pay the railroad company, notwithstanding the exception, and to endeavor itself to recover from the tug, does not appear, and has nothing to do with the case. It did pay the loss, which, but for the exception, it was bound to pay, and took an assignment which subrogated it to whatever right of recovery for the loss the insured might have against third persons. In the presentation to the insurance company by the insured of the protest of the tug's master, above quoted from, and in the receipt by the railroad company of payment for its loss from the insurance company, we find no estoppel which will inure to the benefit of the original wrongdoer, to whom no misleading statement was made, and whose conduct has been in no way influenced by the transactions between insurer and insured. An estoppel in pais only operates in favor of a person who has been misled to his injury. Ketchum v. Duncan, 96 U. S. 666. Nor do the facts make out an

estoppel, as appellants contend, "from considerations of universal right * * * and sound public policy." Having settled between themselves, upon consideration of their contract and the facts in the case, which of them—insurer or insured—should first bear the loss, the person thus injured now seeks reimbursement from the wrongdoer, whose negligence caused the damage. It would be against "universal right and sound public policy" to be astute to relieve the wrongdoer from all liability for his conceded fault because the injured parties have adjusted their mutual equities in some manner satisfactory to themselves, and in no way affecting himself. He is bound to make satisfaction for the injury he has done, without inquiry as to the relative equities of the parties claiming the damages. The Monticello v. Mollison, 17 How. 152.

The decree of the district court is affirmed, with interest and costs.