RUSSEL COLGROVE *v.* THE STEAMSHIP "CITY OF COLUMBIA."

ROSE BERLINER *v.* THE STEAMSHIP "CITY OF COLUMBIA."

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 11, 1898.     DECIDED OCTOBER 15, 1898.

JUDD, C.J., WHITING, J., AND P. NEUMANN, ESQ., OF THE BAR, IN PLACE OF FREAR, J., ABSENT.

In admiralty an appeal suspends the sentence and the cause is to be heard in the appellate court as if no decree had been pronounced. The appeal stays all proceedings and the parties are bound to keep the vessel where it then was, to wit, in the possession of the court. It still remains in the custody of the officer of the court in which it was libeled. The care of its preservation is not altered by the appeal.

The necessary result of proceedings *in rem* (in admiralty) is that the thing in litigation must be placed in the custody of the law and cannot be delivered to either party but on sufficient security. To entitle the *res* to release, a sufficient security must be substituted for it, generally a bond or a stipulation for value. The amount is the value of the vessel or at least not less than the amount of the claim set forth in the libel.

OPINION OF THE COURT BY WHITING, J.

The steamship City of Columbia was libeled in admiralty in the First Circuit Court by Russel Colgrove and also by Rose Berliner for damages for malicious and unjustifiable arrest and

imprisonment and assault and battery alleged to have been committed by Walter S. Milnor, the master of the vessel while on a voyage from a port in the United States to the port of Honolulu, Hawaiian Islands. The amount claimed in the first libel was $15,000 and in the second libel $5000. The steamship was seized and is now held by the marshal.

In the Colgrove claim the court found in favor of the libellant in the sum of $1000, and a decree therefor was entered, from which decree the libellant and also Milnor, the master of the vessel as claimant, appealed to this court. In the Rose Berliner claim, the court found against the libellant and dismissed the libel and dissolved the attachment; and libellant appealed to this court from the decree entered thereon.

The master, Milnor, as claimant now moves this court that he may be allowed to file a bond conditioned for the payment of such moneys as may be awarded libellant, in the sum of $2000 or such reasonable sum as this court may fix, and that the vessel be released from arrest in order to pursue her voyage which has been interrupted by these proceedings, on his filing such bond with proper sureties. The grounds upon which the motion is based are: "That the amount of damages claimed by the libellant are excessive and unreasonable and furnish no proper criterion to be followed in determining the amount of bond to be required of said vessel; that said vessel is now upon her first trip from the port of Seattle in the State of Washington to the ports of Hilo and Honolulu, having been put upon said route to make regular voyages at stated intervals; that the owners of said vessel have no business connections in Honolulu, and it being the first trip of a new line the petitioner is unable to obtain security other than such as he can give upon said vessel; that great loss and hardship is resulting to said vessel and her owners and also to intending shippers at the port of Hilo and elsewhere in consequence of the detention of said vessel; that petitioner has made application to the Circuit Judge before whom said cause was tried to fix the amount of a bond to re-

lease said vessel, but said Judge has declined to make an order deeming it improper to do so as appeals have been taken to this court."

The libellant opposes this motion on the ground that the proceedings are *in rem* in admiralty and that the *res* must remain in the custody of the court until the end of the litigation; and that the vessel can only be released upon a stipulation for value or at least upon a stipulation for value which should be sufficient to cover the claim made in the libel, and should not be less than $15,000.

The libellant Rose Berliner also moved this court for an order to the Circuit Court in admiralty, directing that court not to release the vessel from arrest until the termination of the litigation or such relief as may be suitable, the libellant fearing that the effect of the order of dissolution of the attachment made in the decree in the Circuit Court on her libel would be to release the vessel. This motion raises the question of the effect of the appeal in admiralty as to the disposition of the *res*, and whether or not the appeal suspends the decree and further proceedings in the Circuit Court.

In the case of *The Brig Ann*, 9 Cranch, 290, Chief Justice Marshall says: "In order to constitute and perfect proceedings *in rem* it is necessary that the thing should be actually or constructively within the reach of the court. It is actually within its possession when it is submitted to the process of the court; it is constructively so when by a seizure it is held to ascertain and enforce a right or forfeiture which can alone be decided by a judicial decree *in rem*."

Our statutory proceedings in admiralty are contained in Sections 1509-1513, Civil Laws.

"All applications for the foreclosure of any hypothecation or other maritime lien, upon any vessel, domestic or foreign, or for the enforcement of the rights of salvors, or of material men, or for damages in cases of collision, or for the forfeiture of any vessel or other property for a breach of the revenue laws, or in

causes òf damage where the right of action arose without the jurisdiction of this Republic, shall be by sworn petition, in the nature of a libel."—Section 1509, Civil Laws.

"Upon the filing of any such petition, the Justice shall determine, *ex parte*, upon the propriety of granting the process prayed for. He may, before issuing process, grant an order to show cause, if in his opinion advisable to the ends of justice."—Section 1510, Civil Laws.

The next section, 1511, provides for the service of process and a publication of a notice of such action, proceedings, attachment, &c. The proceedings under our statutes follow the usual course of proceedings in admiralty in other courts of admiralty, except perhaps the power under Section 1510 of the judge to grant an order to show cause before issuing process. The circuit judge at chambers has the jurisdiction to hear and determine all civil causes of admiralty and maritime jurisdiction.

We are of opinion that the appeal suspends the sentence or decree of the circuit judge in admiralty, and that the attachment of the vessel is not dissolved, but that the vessel or *res* must remain in the custody of the circuit court; that the marshal cannot release the vessel without order of the admiralty court which cannot be granted until the litigation is finally at an end. "In admiralty an appeal suspends the sentence, and the cause is to be heard in the appellate court as if no decree had been pronounced. It is not *res adjudicata* until the final sentence of the appellate court is pronounced. The cause in the appellate court is to be heard *de novo* as if no sentence had been passed. This has been the uniform practice not only in cases of appeal from the district to the circuit courts of the United States, but in this court (the Supreme Court of the U. S.) also." *Yeaton v. U. S.,* 5 Cr. 281. The appeal stays all proceedings and the parties are bound to keep the vessel where it then was, to wit, in the possession of the court. *The Rio Grande,* 23 Wall. 463.

In all proceedings *in rem*, on an appeal, the property follows the cause into the circuit court of the United States and is sub-

ject to the disposition of that court; but it does not follow the cause to the Supreme Court of the United States on an appeal to that court. The mandate of the Supreme Court is sent down to the circuit court and there operates upon the fund or property which remains in the circuit court until the litigation is ended. *The Collector*, 6 Wheat. 194; *The Lady Pike*, 96 U. S. 465; *The Lottawane*, 20 Wall. 225.

The necessary result of proceedings *in rem* (in admiralty) is that the thing in litigation must be placed in the custody of the law, and cannot be delivered to either party but on sufficient security. In the United States the property does not follow the appeal into the superior court. It still remains in the custody of the officer of that court in which it was libeled. The care of its preservation is not altered by the appeal. The duty to preserve it is the same. *Jennings v. Carson*, 4 Cr. 9-10; *The Wanata*, 95 U. S. 617.

It is clear to us that as the jurisdiction *in rem* of the admiralty court attached upon the libel and arrest of the vessel, the court retains jurisdiction over the *res* until the final termination of the litigation; and in order for the claimants of the vessel to obtain the release from attachment, pending the end of the proceedings, a stipulation for value should be given. The libellants are entitled to have the *res* stand to satisfy any final judgment they may obtain, and as it is said in *Jennings v. Carson* "the thing in litigation must be placed in the custody of the law and cannot be delivered to either party but on sufficient security." The libellant having the right to have the *res* held by the court, then he is entitled before the release of the *res* to have a sufficient security substituted for the vessel, and such security is generally a bond or stipulation for value, and unless agreed upon between the parties the amount is measured by the value of the vessel, not by the amount of the judgment in the court of the first instance, if rendered, nor by any estimated amount as to what libellant may eventually be decreed. There are statements in the text books to the effect that the admiralty court

may make an order that the vessel or *res* be delivered to the claimant upon his giving a stipulation for such sum "as the court may order," or "in such sum as the court shall direct." Benedict Admiralty, Sections 444 and 447. We however have not found any adjudged cases where the court could fix the amount of the stipulation at a sum less than the value of the vessel or *res*. On the contrary, the cases are numerous where the stipulation is for the value of the vessel which is usually ascertained by her appraisal, unless the parties agree among themselves. In 1 Am. & Eng. Ency. 266, it is stated that "the amount of the stipulation is supposed to be the full value of the property seized, but it is often a matter of agreement between the parties. Thus if a valuable vessel is libeled for a small claim, the libellant's proctors will usually agree that for the purpose of that suit, the value of the vessel may be considered to be an amount sufficient to cover libellant's claim and interest." In a foot note, p. 266, "but when the value of the vessel is fixed by consent, a motion to reduce the amount of the stipulation cannot be made. Otherwise when the amount is fixed by the court or under Revised Statutes, Section 941, *or the court will fix the amount when claimant contends that the amount exacted by libellant is exorbitant.* See *The Monarch,* 30 Fed. Rep. 83 (in the District Court of South Carolina). In that case the libel was for salvage and no stated sum was claimed in the libel. Under force of the vessel, a valuable steamship, having to proceed on her voyage, the claimants agreed to a stipulation in $20,000, although the libellant at first demanded $40,000. A motion was made to reduce the amount of this bond and the District Judge said:

"Had the stipulation been executed under an order emanating from this court, binding on the parties, libellant and respondent, or under the section of the Revised Statutes, I would feel no hesitation in looking into the amount demanded, and in reducing it if the facts justified me in so doing. The *City of Hartford,* 11 Fed. Rep. 89. But in the present case the bond is the result

of the act of the parties, and was insisted upon by the libellant as the sole condition of the immediate release of the steamship and of her cargo. Without such consent she could not have left the port. Reluctantly, and under protest, the claimant finally yielded and gave the bond. This was done to gain a present advantage,—the speedy departure of the vessel, and time and money saved. Upon this, and this alone, the libellant released his lien on the cargo and the ship. He accepted this bond in lieu of both. · This being the act of the parties, accompanied by the release of present advantage on the one part, and the gain of present advantage on the other, I cannot interfere with it. If, when the case comes up on its merits, it shall appear that the libellant took advantage of his opportunity to oppress and harass the respondent by an abuse of the process of the court, he can and he will be punished for it. If his claim has merit, his conduct will enter as an element in fixing his reward. If his claim has no merit, and is simply vexatious, the respondent will have a remedy. But, as the case now stands, without any opportunity —indeed, without any right—to form or to express any opinion as to the ultimate result, I cannot interfere with a stipulation entered into by concurrence of parties and out of court."

We are not aware of any case following the dictum in the case of *The Monarch*. Nor have we found any case where the court made an order that the stipulation should be less than the value of the vessel, nor less than the amount claimed by the libellant. If in such case a stipulation should be taken or ordered taken for a sum less than the value of the vessel and less than the claim of libellant, then the sum named in the stipulation is the limit of liability to libellant, no matter if on appeal the libellant recover judgment for a larger amount than the stipulation.

We are of opinion that the libellants are entitled to a stipulation for value which will be a substitute for the vessel or *res*, and that the amount of such stipulation shall not be less than the amount of the claim or claims against the vessel for which she

is libeled, provided the vessel be valued so much, unless by the agreement of parties a stipulation for a lesser amount be taken.

We have held that the appeal suspends the decree and that the vessel remains in the custody of the circuit court until the termination of the litigation, but we are of opinion that the Circuit Judge in admiralty in keeping the *res* still retains jurisdiction to order an appraisal of the vessel if it shall be necessary, and to allow security to be substituted for the *res*, as by a bond, or a stipulation for value with proper sureties. An order to the Circuit Court in admiralty will be granted directing such court to retain the custody of the vessel until the termination of the litigation, and further, to release the vessel upon the filing of a stipulation for value or a sufficient bond with proper sureties.

Counsel for Rose Berliner has stated in open court that he will accept a bond in the sum of $2500, which sum for the purposes of her libel may be taken as the valuation of the vessel.

*Kinney & Ballou* for libellant Colgrove.

*Geo. A. Davis* for libellant Berliner.

*F. M. Hatch* and *E. Caypless* for the vessel, claimant and master.