Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 This is an appeal in admiralty from the decree of the Circuit Court of the United States for the Southern District of New York, in a cause of collision, civil and maritime.
 

 Damages are claimed in this case by the libellant on account of a collision which occurred on the 11th day of February, 1854, in Delaware Bay, between the schooner John C. Wells, bound on a voyage from New York to Philadelphia, and the schooner Ann Caroline, bound on a voyage from NevT York to Smyrna, in the State of Delaware, whereby the former was run down and .sunk in the bay, and became a total loss. Libel was filed by the owner of the John C. Wells on the twenty-fourth day of February, 1854, and the owners of the Ann Caroline on the sixth day of December following-appeared and filed their answer. Both'parties took testimony in the District Court, and, after the hearing, a decree was entered dismissing the libel, and the libellant appealed to the Circuit Court. Additional testimony was taken in the Circuit Court and the parties were again heard, and, after the hearing,- a decree was entered reversing the decree of the District ‘Court, and a decree was entered in favor of the libellant. Whereupon both parties appealed to this court.
 

 
 *543
 
 I. Libellant objects to the decree because, as he says, the damages allowed are less than he is entitled, to recover; and the claimants object to it because, as they say, the libellant is not entitled to recover anything. Claimants’ vessel was sailing in ballast, but the vessel of the libellant was deeply laden with a cargo of assorted merchandise. They both sailed from the port of New York on the day previous to the collision, and the evidence shows that they both came to anchor during the night, in company with some fifteen or twenty other schooners, at a well-known anchorage outside of Cape May. Evidence also shows that they both got under way on the following day about one or two o’clock in the afternoon, and at the time of collision were beating up the channel, between what is called Crow Shoals and the Jersey shore. Most or.all of the other vessels got under way about the same time, and were also beating up the bay in the same general direction. Proofs show that the wind was north-northwest, blowing “ a full-sail breeze,” and that the tide was an hour flood setting up the bay. Course of the vessels when they first got under way at the anchorage was on the long tack towards the Jersey shore, and it appears that both the vessels were put upon that course. Beating out that tack they then came about and stood towards the buoy, near the lower end of the, shore, on the western side of the channel. Master of the Wells testifies that his vessel went so near the shoal before tacking that she stirred the mud with her centre-board or keel. Vessel of the claimants was more to the leeward, and it appears that her course was changed before she approached so near to the shoal. Pathway of the libellant’s vessel was near the shoal, but the vessel of the claimants was some distance to the leeward and somewhat astern. Having beat out that tack without any difficulty, and without anything have occurred to indicate that thej' were in danger of colliding.- they both went about and were again-put on the long tack towards the Jersey shore, and the proofs are full to the point that they were both sailing on about the samé course. Claimants’ vessel being to the' leeward, and both vessels being closehauled on
 
 *544
 
 the wind, there could not be any danger that they would come together. They were both upon the larboard tack, and were heading about north-northeast. Remark should be made that most or all of the other vessels had tacked at the buoy and were beating up the channel on the samé course. Weight of the evidence also shows that all of them,, except one, was to the leeward, and'most of them were astern ,of the vessel of the libellant. Such was the state of things when the Ann Caroline suddenly and unexpectedly, as alleged in the libel, went about and was put upon the starboard tack, on a coui’se directly towards the injured vessel. Excuse for the sudden change in her course, as alleged in tne answer, is, that a schooner ahead of her having tacked, it became necessary for the vessel of the claimants to go about before she had beat out her larboard tack. Reasons of the alleged necessity are not stated, and the proofs offered in support of the allegation are unsatisfactory; but it is not proposed to place the decision upon that ground, as it is not made certain that the allegation is untrue. Allegation of the libellant is, that the change was sudden and unexpected, and the evidence leads to the same conclusion. When the vessel of the claimants went about she was put upon a course heading west by north; andas the course of the libellant’s vessel had not been changed, it must have been evident to every attentive observer that a collision was inevitable unless one or the other gave way. Sailing as they were in a clear day, with nothing to obstruct their view, although in a' narrow channel less than a mile wide, it is clear that there can be no just excuse for the disaster, and consequently there is fault on one side or the other.
 

 II. Theory of the claimants is that inasmuch as their vessel had come round on to the starboard tack, it was the. duty of the vessel of the libellant to give way and pass to her right. General rule of navigation undoubtedly -is that a vessel on the starboard tack, if closehauled, has a right to keep her course, and that one on the larboard tack, although she is also closehauled, must give way or be answerable for the
 
 *545
 
 consequences.
 
 *
 
 But it is insisted by the libellant that the rule lias no application to the relative position of the two vessels, as shown by the evidence in this case. Iiis proposition in that behalf is that his vessel was to the windward of the vessel of the claimants, and so far ahead of .her in the channel that if those on board his vessel had observed the general rule and ported her helm, a collision would necessarily have followed. Granting that the position of the two vessels was such as is assumed by the libellant, then it is clear that the rule of navigation under consideration cannot apply, and that ■ the views of ' the libellant are correct. Proximity of the libellant’s vessel to the shoal Was such that it rendered it unsafe for those in charge of her to attempt to go about, because the danger was, if they should do so, she would be wrecked on the reef. She could not, therefore, starboard her ljelm and go about, and if, as assumed by the libellant, she Was ahead of the claimants'’ vessel and to the windward, then it is clear that she could not be required to port her helm and attempt to go to the- right, as in doing so she would have to cross the bows of the vessel astern, and must incur the imminent danger of colliding with the vessel of the claimants.
 

 III. Principal question of fact therefore, is whether the theory assumed by the libellant is correct, because it is obvious that if the facts are so, the conclusion deduced from them must follow. Two controverted facts are assumed in the proposition of the libellant. 1. That his vessel was to the windward. 2. That she was ahead in the channel. Argument is not necessary to show that the libellant is right on the first point.,' as the whole current of the evidence when properly understood is that way, but there is much conflict in the testimony on the second point. 'Where -the conflict of testimony in respect to a disputed fact is between the witnesses on board the respective vessels, and no other's are examined in the case, it is sometimes difficult to form any satisfactory conclusion. No such embarrassment, how
 
 *546
 
 ever, arises in this case, as there were four witnesses examined who were on board the other vessels in the same company. Those witnesses concur in the statement, not only that the vessel of the libellant was to the windward of the claimants’ vessel, but that she was above her in the channel; and in view of the whole case, we adopt that conclusion as the correct one from the evidence. The vessel of the claimants was also in fault because she had no lookout, and the evidence tends strongly to the conclusion that the disaster is mainly attributable to that-cause. Testimony shows beyond controversy, that she had no lookout at the time of the collision, and that the master, after the vessel was put about and filled away on the stai’board tack, went below, and when he came on deck just before the disaster occurred, he inquired, with evident displeasure, if no one had seen the vessel of the libellant, and it is clear that he had abundant reason for dissatisfaction. Usual precautions were then too late, and in a very short time the vessel of the claimants struck that of libellant, and the- latter sunk in the channel. Plainly the vessel of the libellant could not avoid the collision, because if she had attempted to go about she would have gone ou the reef, and if she had ported her helm, and attempted to go to the right, she would have collided with the vessel of the claimants. On the other hand, it is clear beyond doubt, that the vessel of the claimants might have avoided the disaster without any peril. She might have gone about, as she had ample'room to do, or she might have starboarded her helm, and gone under the stern of the other vessel. For these reasons we think the conclusion of the Circuit Court was right upon the merits.
 

 IV. The rule of damages adopted by the court is the subject of complaint on both sides, and as both parties have appealed, the whole matter is open to revision. Sum allowed was seven thousand two hundred and two dollars and fifty-one cents, and the court ordered a summary judgment ■against the stipulators for that amount. Interlocutory decree was that the libellant recover the amount of the loss and .damages by him sustained by reason of the collision, and
 
 *547
 
 tbe cause was referred to a commissioner to ascertain, the amount. Commissioner reported that the value of the vessel was five thousand dollars, and that the interest on the same to the date of the report, was two thousand three hundred and sixty-two dollars and fifty cents, and he accordingly reported the amount of those two sums as the damages in the cause. Exceptions were filed by the claimant to that report as follows:
 

 1. That the sum reported as the value of the vessel was too much.
 

 2. That the commissioner erred in allowing interest.
 

 3. That the rule of damages adopted was erroneous: that the amount should not exceed the value of the claimants’ vessel and freight pending.
 

 4. That the commissioner erred in examining testimony as to the value of claimants’ vessel.
 

 Circuit judge sustained the third and fourth exceptions, and recommitted the report. Subsequently, the commissioner made a second- report.. In his second report he found:
 

 1. That- the value of the vessel of the libellant was five thousand dollars, and that by reason of the collision she was a total Iocs.
 

 2. That the vessel of the claimants was worth the sum of thirty-five hundred dollars.
 

 3. That the freight pen.ding on the cargo of the claimants’ vessel was five hundred and thirteen dollars.
 

 4. That the interest on the freight and value of claimants’ vessel was two thousand four hundred and thirty-one dollars and forty-three cents.
 

 Accordingly he reported as due to the- libellant the aggregate of those several sums. Both parties excepted to the report, but the court overruled their exceptions and confirmed the report, which was the foundation of the final decree, which is for the same amount.
 

 Libellant insists that the first report of the commissioner was correct, that is, that ho is entitled to recover the value
 
 *548
 
 of bis vessel together with the interest on that amount from the time of the collision to the date of the decree. On the other side the claimants insist that the stipulation for value under the general rules of the admiralty, stands in the place of the vessel, and that the decree as against the stipulators cannot exceed the amount of the stipulation. Separate stipulations are usually filed for costs, and the same rule, it is admitted, applies to such a stipulation as to the one given for the value of the vessel. Stipulation for costs in the sum of two hundred and fifty dollars was regularly filed by the claimants in this case at the time they entered their appearance. Such a stipulation is properly required as a condition of the right to appear, unless the claimant, under the-act of the third of March, 1847, had given the bond to the marshal therein mentioned for the discharge of the property arrested at the time of the service of the monition.
 
 *
 
 Suit in this case was
 
 in ran,
 
 and consequently the vessel, when airested, was in contemplation of law in the possession of the court. But the practice is where the claimant desires to regain the possession to allow the value of the same to be ascertained, and when that is done according to law, the claimant may file a stipulation for that amount in the place of the vessel. When the claimant desires to secure the possession of the' vessel, he may apply to the court for an appraisement, or if the parties agree upon a sum as the value, the cotirt may adopt that sum, and accept a stipulation for that amount. Parties in this case agreed that the value of the vessel was five thousand dollars, and thereupon the court accepted a stipulation for that amount, and the vessel was delivered to 'the claimants.
 
 †
 
 Obligation of a stipulator is the same as that of a surety, and consequently his liability is limited by the terms of his contract. Whenever the obligation of the stipulator is for a definite sum named in the stipulation, the surety stipulating to pay that sum cannot be compelled to
 
 *549
 
 pay more than that amount.
 
 *
 
 Same rule prevails whether the instrument is in form a bond or stipulation. "Where a claimant in a suit
 
 in rem
 
 made application for a delivery of the property, and obtained it by an order of the court upon giving a bond to suspend .the appraised value, Judge Story held that the bond was good as a stipulation, and having affirmed the decree condemning the vessel, ordered that judgment should be entered against the signers of the bond as stipulators for the appraised value of the vessel with costs.
 
 †
 
 Mr. Benedict says, that where a party .is entitled to have the property delivered on bail, lie is bound to stipulate with sureties to pay the full value of the property. Such value, says the same author, may usually he fixed by consent and agreement of parties, but if not, then it is ascertained by an appraisement, and on final decree the stipulators are bound to pay into court
 
 the sum ascertained as the value.
 

 ‡
 

 Bail is taken, says Mr. Dunlap, for the value of the ship upon the delivery of the property, and it will not be reduced upon the ground that the property brought less upon a sale than the appraised value.
 
 §
 
 Settled rule is, that where the value of the vessel condemned in a cause of damage is insufficient to pay the loss, it is not competent for the court to award damages against the owner beyond the value or proceeds of the ship.
 
 ||
 
 But it has been hold that costs might be awarded against the owner where there -was an appearance and hearing, although no stipulation to that effect had been given.
 
 ¶
 

 Buie in admiralty, however, is the same as at law, that sureties are only bound to the extent of the obligation expressed in their bond, but'not beyond its plain and obvious meaning.
 
 **
 

 
 *550
 
 True measure of damages in this case was the loss which the libellant sustained by the sinking of his vessel, which, as the commissioner reported, was five thousand dollars. He lost that amount, and-there is no proof in the case that he lost anything more, for which any claim is made in the libel. Stipulation for value filed by the claimants was for that sum, and consequently the libellant is entitled to a decree against the stipulators for that sum, as the value of the vessel and no more, because they never agreed to be bound for any greater sum:
 

 Argument of the libellant is, that he is entitled,to nterest on that sum as against the stipulators for value, but it is a sufficient answer to the proposition to say that this court has expressly decided otherwise, and we adhere to that decision.
 
 *
 

 • Separate stipulation was filed for costs, and, of course, the libellant is entitled to full costs in the District and Circuit Courts, unless the amount exceeds the sum specified in the stipulation. He is, also, entitled to a decree of affirmance upon the merits, but without costs in this court, and the decree of the Circuit Court must be modified as to the damages so as to conform to views expressed in this opinion.
 

 The DECREE AFFIRMED AS MODIFIED.
 

 *
 

 St. John
 
 v.
 
 Paine et al., 10 Howard, 581.
 

 *
 

 9 Stat. at Large, 181; 2 Conklin’s Admiralty, 94, 97; Admiralty Rules 26 and 34.
 

 †
 

 Admiralty Rule 11; 2 Conklin’s Admiralty, 96; Lane
 
 v.
 
 Townsend et al., Ware, 300.
 

 *
 

 Godfrey
 
 v.
 
 Gilmartin, 2 Blatchford, 341; Admiralty Rule 11.
 

 †
 

 The Alligator, 1 Gallison, 1491.
 

 ‡
 

 Benedict’s Admiralty, § 498, p. 272; Dunlap’s Practice, 181; The Octavia, 1 Mason, 150.
 

 §
 

 Dunlap’s Practice, 174; The Peggy, 4 C. Robinson, 387.
 

 ||
 

 The Hope, 1 W Robinson, 155.
 

 ¶
 

 The John Dunn, 1 Id. 100.
 

 **
 

 The Harriet, 1 Id. 192.
 

 *
 

 Hemmenway
 
 v.
 
 Fisher, 20 Howard, 258.