**BOSTON SAND & GRAVEL CO. v. UNITED STATES.**

(Circuit Court of Appeals, First Circuit. July 7, 1925. Rehearing Denied September 9, 1925.)

No. 1826.

Collision ⚖️102—Destroyer, which had stopped in fog, and following lighter, both held in fault.

A steam lighter was following a destroyer out of Boston Harbor in a fog. When the destroyer approached the gate in a submarine net, it was open, but appeared to be closed, and she stopped. The lighter, not seeing her until within a few feet in swinging aside, came into collision with her depth charge sponson, extending beyond her stern under water, and both vessels were injured. *Held*, that both were in fault; the lighter for not keeping such speed that she could stop after seeing the vessel ahead, and the destroyer for not keeping a proper lookout astern, knowing that the lighter was following.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Suit in admiralty for collision by the Boston Sand & Gravel Company against the United States. Decree for the United States and libelant appeals. Reversed and remanded.

For opinion below, see 298 F. 768.

Foye M. Murphy and Edward E. Blodgett, both of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellant.

Laurence Curtis, 2d, of Boston, Mass. (Harold P. Williams, of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the federal District Court for Massachusetts in an admiralty proceeding brought by the Boston Sand & Gravel Company, the owner of the steamer Cornelia, against the United States, under

a special act of Congress approved May 15, 1922 (42 Stat. 1590), to recover damages sustained by the Cornelia in collision with the destroyer Bell in the dredged channel of Broad Sound at the entrance to Boston Harbor, August 9, 1918.

The court below entered a decree dismissing the bill, and the libelant appealed.

The Cornelia was a steam sand lighter, 130 feet long and 39.5 feet beam. At the time of the collision she was proceeding light from Boston to Scituate, at about 4½ knots, to obtain a cargo of sand and gravel. There was a thick fog, restricting one's view to from 50 to 75 yards. The Bell was 314 feet long and 31 feet in width. Her bridge was 225 feet from her stern, and she was painted in camouflage colors.

On the morning in question both vessels were proceeding out of the harbor, intending to go through the north channel. At that time, for war purposes, a steel submarine net, about 500 feet long, having a gate 100 feet wide, had been stretched across this channel. The gate swung on buoys at the left side of the channel as one passed out to sea. In the daytime it was kept open, being moored at right angles to the net. The net and gate were submerged, but their location was marked by buoys. A vessel desiring to go out of the harbor was required to receive permission from a station ship anchored off Deer Island Light, about a mile from the net.

As the vessels approached Deer Island Light, the Bell passed the Cornelia on her starboard side some 150 feet distant, and obtained permission to go through the net a few minutes before the Cornelia did. When the Bell passed the Cornelia, the fog had lifted somewhat, and each knew and appreciated that the other was outward bound through the net, and the Bell was aware that the Cornelia was proceeding at a slightly slower speed than she was. When the Bell came within sight of the net the gate appeared to be closed, and her officers caused her engines to be reversed. The Bell stopped, and remained so for two minutes, when her lookout on the bridge sighted the Cornelia. About three minutes elapsed from the time the net was sighted until the Cornelia was seen. She was first seen on the port quarter of the Bell by the lookout on the port wing of the Bell's bridge, who was stationed about 215 feet from her stern. Immediately on observing the Cornelia, the Bell signaled for standard speed ahead.

Two men were stationed on the Bell's fan tail, about 20 to 30 feet from her stern. It was undisputed that the duties of these men were to attend to the depth charge and to look out for submarines. There was a dispute, however, whether they were to observe and report vessels generally. They made no such reports that morning on the way out. Both vessels claim to have given the proper fog signals, though neither heard the other. On the stern of the Bell was a depth charge sponson extending out under the water some 15 or 20 feet.

When the Cornelia sighted the Bell, they were from 75 to 120 feet apart. She then ported and turned her bow to starboard, and in doing so struck the depth charge sponson, which cut her open and made it necessary to beach her. The sponson of the Bell was broken, and she received other damage.

The District Court found that the Bell was at rest at the time of the accident and was free from fault; that the Cornelia was at fault, apparently because she failed to so regulate her speed in the fog that she could stop after first seeing the Bell.

We think that the District Court erred in finding that the Bell was free from fault. There can be no question that the Bell knew the Cornelia was following her out through the net only a short distance behind, that she knew the passage was a narrow one, and that in stopping in the fog as she approached the gateway she was creating a dangerous situation, which called for special care and caution, particularly with reference to the Cornelia. Being aware of these facts, she failed to station any one at her stern to observe and report the approach of the Cornelia, or to instruct the men on the fan tail (the depth bomb men) to observe and report the approach of the Cornelia. The evidence further showed that, had the Bell been 10 feet in advance of the position she was in at the time the Cornelia crossed her stern, no accident would have occurred.

It is therefore evident that time was of the essence, and, had the approach of the Cornelia been reported to the Bell but a short time earlier, the accident would not have occurred. All the witnesses for the libelant testified that, had the Bell stationed a lookout at her stern, the Cornelia's approach would have been sooner observed, and two of the officers of the Bell testified that with a lookout the approach of the Cornelia would undoubtedly have been seen sooner than she was by the lookout on the bridge. We think the Bell was guilty of contributory

fault. The damages to the vessels should be divided.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant.